UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ALFREDO PLANA,
    Plaintiff,

v.

STEVEN T. MNUCHIN,
    Defendant.

No. 3:18-cv-337 (VAB)

**RULING AND ORDER ON MOTION TO DISMISS**

Alfredo Plana ("Plaintiff"), an employee of the Internal Revenue Service ("IRS"), allegedly suffered discrimination, a hostile work environment, and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* Compl., ECF No. 1 ¶ 1, 4.

Steven T. Mnuchin, in his official capacity as the United States Secretary of the Treasury ("Defendant"), moves to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6). FED. R. CIV. P. 12(b)(6). Def.'s Mot. to Dismiss or for Summ. J. ("Def. Mot."), ECF No. 24.[1]

For the reasons set forth below, the Court now **GRANTS** Defendant's motion to dismiss, ECF No. 24, but also grants Mr. Plana leave to file an Amended Complaint by **April 12, 2019**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Allegations

Since August 6, 2007, Mr. Plana has worked as a Senior Individual Taxpayer Advisory Specialist ("ITAS") in the Hartford, Connecticut IRS Office. Def. Mot., Ex. B, Office of Civil

---

[1] Defendant characterizes this motion in the alternative, either as a motion to dismiss or for summary judgment. Def. Mot. Because discovery has not closed, the Court will treat the motion as a motion to dismiss and apply Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000) ("Only in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery."); *cf Burgess v. Fairport Cent. Sch. Dist.*, 371 F. App'x 140, 141 (2d Cir. 2010)(summ. order) (Affirming summary judgment before the close of discovery where plaintiffs alleged "no specific facts . . . . that the Defendants had used a 'PDA' device to eavesdrop on their private communications[.]").

Rights and Diversity for the Treasury, Complaint ([Case No. IRS-17-0390-F] June 9, 2017) ("OCRD Compl." or "Internal Treasury Complaint"),[2] ECF No. 24-4, at 5; Compl. ¶ 4. Mr. Plana, who is Puerto Rican, alleges that his supervisors know his "ethnic background, national origin, color, sex, and sexual orientation, Compl. ¶¶3, 6, and that he is or "was the only gay person in his working group." *Id*.

Mr. Plana claims that the IRS discriminated against him "on the grounds of his national origin (Hispanic/Puerto Rican), color (white), and sex (male, LGBT)," and created a hostile workplace by: (1) failing to provide him with requisite training, *id*. ¶ 7; (2) altering his schedule and mischaracterizing him as AWOL, *id*. ¶¶ 8, 10; and (3) mocking his accent, *id*. ¶ 9. Mr. Plana also alleges that the IRS retaliated against him for filing a hostile workplace complaint. *Id*. ¶ 11.

### 1. Alleged Failure to Provide Training and Related Disciplinary Actions

Mr. Plana alleges that he was "the only person in his group who was never provided any on-the-job training ("OJT")," *id*. ¶ 7, including on the Interactive Tax Law Assistant," which is allegedly required for his particular position. *Id.* ¶ 7. Mr. Plana further alleges that his supervisor, Tyese Daley, formally reprimanded him for failure to use the Interactive Tax Law Assistant but still did not provide training. OCRD Compl. at 5. Ms. Daley allegedly issued a letter of reprimand for Plaintiff's failure to use Interactive Tax Law Assistant, *id*. at 6; the IRS allegedly removed the letter from Mr. Plana's personnel file when he explained that he had not been properly trained on the Interactive Tax Law Assistant. *Id*. at 6.

---

[2] Defendant has submitted Plaintiff's OCRD complaint. The Court incorporates the OCRD complaint by reference to the extent that it amplifies the claims of the Complaint. A court considering a motion to dismiss under Rule 12(b)(6) may review "any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp*., 482 F.3d 184, 191 (2d Cir. 2007).

### 2. Alleged Discriminatory Scheduling and AWOL Charging

At some point, Mr. Plana's tour of duty start time was changed from 7:30 a.m. to 8:00 a.m., allegedly making him "work a heavier load than others in his unit." Compl. ¶ 8; OCRD Compl. at 11.[3] On December 8, 2016, Mr. Plana allegedly requested that his tour of duty revert to 7:30 a.m. – 4:00 p.m. OCRD Compl. at 11. On January 27, 2017, Victoria Grant, the group manager, denied the request by e-mail. *Id.* at 11. Mr. Plana claims that "long before [he] started working in this department under Tyese Daley", such requests were either immediately denied or presumptively approved. *Id.* Mr. Plana alleges that he and one other employee in his unit, also of "Hispanic" race or ethnicity, were the only two "treated in this summary fashion." Compl. ¶ 8.

On June 10, 2016, Ms. Daley allegedly directed her subordinate to charge Mr. Plana as absent without leave ("AWOL"), even though he had requested an "unanticipated sick leave" charge. OCRD Compl. at 6. On June 16, 2016, Plaintiff was allegedly charged AWOL "as a result of being unavoidably late to work without providing advance notice, a circumstance which is not considered being AWOL in his agency and for which no other non-Hispanic employee in his unit ever has been disciplined[.]" *Id*. ¶ 10. On March 3, 2017, Mr. Plana was again charged as AWOL for arriving to work thirty minutes late due to a medical appointment for a recently broken ankle. *Id.* at 5.

### 3. Alleged Accent Mocking

Mr. Plana alleges that Ms. Daley made fun of his Spanish accent "on at least three separate occasions" in 2017 "in the presence of co-workers." Compl. ¶ 9. On one occasion, Ms. Daley allegedly laughed at Mr. Plana's pronunciation of inventory, made him repeat himself repeatedly as she laughed at him, and then told him how to correctly pronounce the word. OCRD

---

[3] The Complaint lists January 27, 2017 as the tour of duty start time change whereas the EEO Complaint suggests that the change occurred in 2016. The Court makes no adverse inference as to the difference.

Compl. at 6. Another time, she allegedly laughed about something he had said and asked him to repeat it but a co-worker named Jean repeated what Mr. Plana had said so that he would not have to do so. *Id.*

### 4. Alleged Retaliation

Mr. Plana alleges that he received OCRD's final agency decision on December 26, 2017, and that around one month later, supervisor Robert Bartoli issued a counseling memo in retaliation for the discrimination complaint. Compl. ¶¶ 5, 11.

### B. Procedural Background

On March 7, 2017, Mr. Plana allegedly contacted a Treasury Department counselor regarding his allegations of discrimination. Mem. of Law in Supp. of Mot. to Dismiss or for Summ. J. ("Def. Mem. of Law") at 7.[4]

On June 9, 2017, Mr. Plana filed an intra-agency discrimination complaint with the Office of Civil Rights and Diversity for the Treasury. OCRD Compl.

On June 12, 2017, OCRD issued Mr. Plana a "Claims to be Investigated" letter regarding Defendant's alleged: 1. Failure to provide on-the-job training generally and with respect to the ITLA, 2. Wrongful AWOL charging in June 2016 and March 2017, 3. January 27, 2017 denial of Mr. Plaintiff's TOD scheduling change request, and 4. Accent mocking. Def. Mot., Ex. A, Office of Civil Rights and Diversity for the Treasury, Claims to be Investigated (June 12, 2017), ECF No. 24-3.

On December 26, 2017, Plaintiff allegedly received a notice of final agency decision. Compl. ¶ 5.

On February 26, 2018, Plaintiff filed his Title VII complaint. Compl.

---

[4] This date is more favorable to Plaintiff than the June 9, 2017 filing date for his intra-agency discrimination complaint. Defendant has consented to using this date for the purposes of this motion. Def. Mem. of Law at 7.

On August 24, 2018, Defendant moved to dismiss the Complaint. Def. Mot.[5]

On September 14, 2018, Plaintiff opposed the motion to dismiss. Pl. Brief in Opp. to Mot. to Dismiss and/or for Summ. J. ("Pl. Opp."), ECF No. 25.

On October 4, 2018, Defendant replied. Reply Mem. of Law in Supp. of Mot. to Dismiss or for Summ. J. ("Def. Reply"), ECF No. 28.

On March 7, 2019, the Court held a hearing on the motion to dismiss. Minute Entry, ECF No. 31.

## II.  STANDARD OF REVIEW

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a). Any claim that fails "to state a claim upon which relief can be granted" will be dismissed. FED. R. CIV. P. 12(b)(6). In reviewing a complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "two working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[A] plaintiff's obligation to provide the 'grounds' of [his or her] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (internal citations omitted)). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, the complaint must contain "factual amplification . . . to render a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010), *quoting Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009).

---

[5] The Court granted three extension of time for Defendant's response to the Complaint, resulting in a deadline of August 24, 2018. ECF Nos. 13, 15, 23. As a result, Defendant's motion to dismiss was timely.

5

When reviewing a complaint under Federal Rule of Civil Procedure 12(b)(6), the court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. The court also views the allegations in the light most favorable to the plaintiff and draws all inferences in the plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also York v. Ass'n of the Bar of the City of New York*, 286 F.3d 122, 125 (2d Cir. 2002) ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true."), *cert. denied*, 537 U.S. 1089 (2002).

## III. DISCUSSION

### A. Timely Administrative Exhaustion

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994), *citing Loeffler v. Frank*, 486 U.S. 549, 554 (1988). Title VII provides a waiver to sovereign immunity to protect federal employees "from any discrimination based on race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-16(a). The waiver, however, is limited and contingent on a plaintiff's compliance with pre-suit administrative remedies. *Lanham v. Shinseki*, 662 F. Supp. 2d 238, 242 (D. Conn. 2009) ("First, an expansive or flexible reading of § 1614.105(a) is inappropriate because compliance with pre-suit administrative procedures, including exhaustion of remedies, for claims of discrimination is a condition of the waiver of sovereign immunity and thus must be strictly construed.") (internal quotation and citation omitted), *aff'd sub nom. Lanham v. Mansfield*, 400 F. App'x 609 (2d Cir. 2010). Federal employees must timely exhaust administrative remedies before courts can enforce Title VII's waiver of sovereign immunity. *Id.*; *see also* 42 U.S.C. § 2000e-16(a)–(c).

When federal employees "believe they have been discriminated against on the basis of race, color, religion, sex, national origin, age, disability, or genetic information[, they] must consult a Counselor prior to filing a complaint in order to try to informally resolve the matter[. They] must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105. The consultation requirement applies to on-the-job training claims. *Barrow v. Ford Motor Co.*, No. 03-CV-621A, 2007 WL 1655660, at *9 (W.D.N.Y. June 5, 2007).

Even when plaintiffs allege ongoing job training violations, courts view "the denial of . . . training opportunities [as] discrete actions for purposes of triggering the applicable limitations period." *Id.*;[6] *see Hanfland v. Donahoe*, No. 10-CV-6106-FPG, 2015 WL 4930582, at *8 (W.D.N.Y. Aug. 18, 2015) ("Applying the principles set forth in *Morgan* regarding the nature of discrete acts . . . the unrelated decisions by Postal Service managers regarding training/work assignments . . . constitute discrete employment actions, i.e., separate, actionable unlawful employment practices, and are not part of a continuing violation. These claims, arising before November 2, 2008, are unpreserved for failure to timely exhaust), *discussing Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113–115 (2002).

Mr. Plana allegedly first consulted with a Treasury Department counselor on March 7, 2017. Def. Mem. of Law at 7. Given that date, Plaintiff's June 2016 AWOL claims fall outside

---

[6] Plaintiff cites *Fitzgerald v. Henderson*, 251 F.3d 345 (2d Cir. 2001). *Fitzgerald* is factually inapposite because the plaintiff did not allege a failure to train. Rather, the plaintiff alleged that her supervisor followed her, made explicit comments about her body, touched her hair, forced her to work unscheduled overtime, criticized her efficiency, etc. *Id.* at 350–51; *id.* at 363 ("Thus, although the final abusive incident on September 25, 1997, was separated from Gerlin's final sexual advances by a gap of nearly 2 ½ years, Fitzgerald's assertions plainly alleged that there was no interruption in the allegedly unwarranted abuse to which she was subjected during that 2 ½-year Phase II period.").

7

the forty-five day counseling window and are time-barred.[7] *Lanham*, 662 F. Supp. 2d at 242 ("compliance with pre-suit administrative procedures . . . for claims of discrimination is a condition of the waiver of sovereign immunity and thus must be strictly construed.").

Furthermore, Mr. Plana's claims that he was denied on-the-job training, including Interactive Tax Law Assistant instruction, since 2007 or 2008, OCRD Compl.; Compl. ¶ 7, cannot proceed because of Mr. Plana's failure to timely exhaust his administrative remedies. Mr. Plana cannot circumvent the strict counseling requirement by framing the claims as continuing violations or evidence of a hostile work environment. *Hanfland*, 2015 WL 4930582, at *8 ("Therefore, I agree that Plaintiff cannot circumvent the EEO 45–day requirement by simply recasting her unexhausted discrete claims regarding training/work assignments decisions . . . alleged in her Complaint, as a hostile work environment claim. It is manifestly clear, in any event, that a hostile environment claim cannot resuscitate time-barred discrete discriminatory acts.").

As a result, Plaintiff's 2016 AWOL claims and failure-to-train claims must be dismissed as untimely. 29 C.F.R. § 1614.105 (Federal employees "must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action.").

By contrast, claims stemming from the alleged January 27, 2017 denial of Mr. Plana's schedule change request, March 2017 AWOL mischaracterization, and 2017 incidents of accent mocking[8] were timely submitted to a counselor.

---

[7] Defendant claims that "In addition to being time-barred, the June 2016 AWOL claim cannot be raised . . . because Plaintiff's election of his collective bargaining (union) remedies precludes this claim." Def. Mem. of Law at 15. Defendant submits Plaintiff's union grievance. Def. Mot., Ex. D, Wage and Investment Division for the Treasury, Grievance Form (June 27, 2016), ECF No. 24-6, at 3. Because the Court has found the claim time-barred, it need not determine whether it is also barred by Plaintiff's alleged union grievance.

### B. *Prima Facie* Showing of Discrimination

Title VII prohibits employers from discriminating on the basis of race. 42 U.S.C. § 2000e-2(a)(1). Courts apply a three-step burden shifting framework to claims of employment discrimination. *Roncallo v. Sikorsky Aircraft*, 447 F. App'x 243, 245 (2d Cir. 2011), *citing McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

"At step one of the *McDonnell Douglas* analysis, the plaintiff must establish a prima facie case of discrimination by showing that: 1) he [or she] belonged to a protected class; 2) he [or she] was qualified for the position; 3) he [or she] suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." *Id*. (internal quotations omitted), *citing Mathirampuzha v. Potter*, 548 F.3d 70, 78 (2d Cir. 2008).

An adverse employment action is a "materially adverse change in the terms and conditions of employment." *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (internal quotations and citations omitted).[9] Mere disruption or inconvenience do not rise to the level of material adversity. *Sanders v. N.Y. City Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir.2004). Furthermore, "[o]nly in limited circumstances does a single, acute incident of abuse qualify as an adverse employment action." *Mathirampuzha*, 548 F.3d at 78–79. To be materially adverse, a change in working conditions must be more disruptive than a mere

---

[8] Defendant argues that Plaintiff's accent mocking claims are time-barred because at least one instance was allegedly witnessed by an employee that retired in 2015. Def. Mem. of Law at 8. The Court disagrees. Plaintiff's Complaint alleges that the accent mocking took place in 2017. Compl. ¶ 9. Defendant's accent mocking exhaustion claim therefore requires review of a fuller factual record than is presently before the Court.

[9] The *Galabya* plaintiff sued under the Age Discrimination in Employment Act of 1967. 29 U.S.C. § 621 *et seq.* The *Galabya* court's definition of an "adverse employment action" is widely cited in the Second Circuit, including in Title VII cases. *See, e.g.*, *Rodriguez v. Westbury Pub. Sch.*, No. CV 13-4976, 2015 WL 4459351, at *5 (E.D.N.Y. July 15, 2015)("A preliminary issue here is whether Plaintiff has suffered an 'adverse employment action' as required. A plaintiff sustains an adverse employment action if he or she endures a 'materially adverse change' in the terms and conditions of employment."), *citing Galabva,* 202 F.3d at 640.

inconvenience or an alteration of job responsibilities. "Examples of such a change include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." *Sanders*, 361 F.3d at 755.

Material adversity is highly contextual. For example, in *Galabya*, the Second Circuit affirmed a summary judgment ruling in favor of a school board who transferred a junior high school typewriting teacher to a high school typewriting position because the transfer was "purely lateral" and not materially adverse. *Id*. at 639. By contrast, the Second Circuit reversed a 12(b)(6) dismissal of a junior high school art teacher's discrimination claims because she had twenty years of experience and study in developing art programs for middle school children and her transfer to an elementary school arts program was a "radical change in the nature of the work [she] was called upon to perform." *Rodriguez v. Bd. of Ed. of Eastchester Union Free Sch. Dist.*, 620 F.2d 362, 366 (2d Cir. 1980) ("Appellant's substantially uncontradicted evidence indicated that the art programs at the elementary level were so profoundly different from those in the junior high school as to render utterly useless her twenty years of experience and study in developing art programs for middle school children.").

Two adverse employment claims remain: the January 27, 2017 denial of Mr. Plana's schedule change request and the March 2017 AWOL mischaracterization. Defendant claims that neither claim is an adverse employment action. Def. Mem. of Law at 12-14.

The Court agrees.

Plaintiff alleges that his 8:00 a.m. start time "caused [him] to work a heavier load that others in his unit." Compl. ¶ 8. He also claims that "[n]on-Hispanics in the unit were permitted to begin working earlier than 8:00 [a.m.] if they wished to do so." *Id*. Beyond those two allegations,

Plaintiff provides no description of his work, particularly work volume during particular times of the day.

Plaintiff's bare allegation of having worked more than others is not dispositive of a materially adverse employment action. *See Sanders*, 361 F.3d at 755 ("To be materially adverse, a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities. Examples of such a change include . . . a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation.").[10] Rather, with nothing more than a conclusory statement about his workload, Plaintiff's Complaint lacks the "factual amplification . . . to render a claim plausible," *Arista Records LLC v. Doe 3*, 604 F.3d at 120, and cannot withstand a motion to dismiss, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[A] plaintiff's obligation to provide the 'grounds' of [his or her] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (internal citations omitted)); *see also Iqbal*, 556 U.S. at 679 ("only a complaint that states a plausible claim for relief survives a motion to dismiss.").

Similarly, Plaintiff's single remaining AWOL mischaracterization does not rise to the level of a materially adverse employment action. *Mathirampuzha*, 548 F.3d at 78–79 ("[o]nly in limited circumstances does a single, acute incident of abuse qualify as an adverse employment action."). Plaintiff has not pled that the AWOL mischaracterization was tantamount to a

---

[10] Defendant relies on *Daniels* and *Albuja* for the proposition that unfavorable scheduling is not an adverse employment action. See *Daniels v. Connecticut*, No. 3:12-CV-0093 VAB, 2015 WL 4886455, at *8 (D. Conn. Aug. 17, 2015); *Albuja v. Nat'l Broad. Co. Universal, Inc*., 851 F.Supp.2d 599, 608 (S.D.N.Y. 2012). *Daniels* and *Albuja* were both decided at the summary judgment stage on a fuller factual record. At this stage, the Court cannot determine that a schedule change could not constitute a materially adverse employment action. *See Sanders*, 361 F.3d at 755 ("Examples of such a change include . . . a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation.").

demotion or alteration to his job responsibilities. *Sanders*, 361 F.3d at 755. Even viewing the single AWOL mischaracterization in the light most favorable to plaintiff, *York*, 286 F.3d at 125 ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true."), the alleged AWOL mischaracterization is not a materially adverse employment action. As a result, the Court must dismiss Plaintiff's AWOL claim.

### C. Hostile Workplace

To establish a hostile work environment claim under Title VII, a plaintiff must show "that the 'workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Raspardo v. Carlone*, 770 F.3d 97, 114 (2d Cir. 2014), *quoting Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). In *Harris,* the Supreme Court laid out a two-part test for hostile workplace claims. The plaintiff must show that the workplace is both objectively "severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." *Id.*

"There is no 'mathematically precise test,' however, for deciding whether an incident or series of incidents is sufficiently severe or pervasive to alter the conditions of a plaintiff's working environment." *Id.*, *quoting Harris*, 510 U.S. at 22–23. "Instead, courts must assess the totality of the circumstances, considering elements such as 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Id., quoting Harris*, 510 U.S. at 23.

Two allegations survive in support of Mr. Plana's hostile workplace claim: (1) the denial of his schedule change request, and (2) three alleged incidents of accent mocking in 2017.

"Evidence that supervisors ridiculed an employee's accent may . . . help support a finding that the employer created a hostile work environment because of the employee's national origin." *Constantin v. New York City Fire Dept.,* 2009 WL 3053851 at *19 (S.D.N.Y. 2009), *id*. at *21 ("A rational jury could conclude that receiving cleaning duties on a daily basis, and having her accent belittled 'every morning' for several months, amounted to sufficiently frequent harassment of Plaintiff to qualify as 'pervasive.'"); *Duarte v. St. Barnabas Hosp*., 265 F. Supp. 3d 325, 350 (S.D.N.Y. 2017) ("A reasonable jury could conclude that Quinones' disability-based and national origin-based remarks about Plaintiff were 'sufficiently continuous and concerted to have altered the conditions of her working environment.'"), *citing Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002); *cf Thelusma v. New York City Bd. Of Education*, 2006 WL 2620396 at 3 (E.D.N.Y. 2006) ("Thelusma acknowledged at his deposition that . . . Mejia never used any language indicating any racial animosity towards him. Even if Mejia recommended that Thelusma take accent reduction classes, such advice would be consistent with a beneficent design to afford him the opportunity to improve his communication skills, an absolute prerequisite for adequate job performance by a teacher, rather than evidence of a discriminatory intent.") (internal quotations omitted)). To demonstrate a material issue of fact in an accent-ridicule hostile workplace claim, a plaintiff must typically demonstrate that the discrimination was "frequent . . . pervasive", *Constantin,* 2009 WL 3053851 at *21, or "sufficiently continuous and concerted." *Duarte*, 265 F. Supp. 3d at 350.

Mr. Plana alleges that he was subjected to a hostile work environment because a single supervisor "ridiculed and laughed at [him] because of his Spanish accent, in the presence of co-

workers" on "three separate occasions during the calendar year 2017," Compl. ¶ 9, and because his schedule was changed by thirty minutes, *id*. ¶ 8.

Defendant argues that these allegations are insufficient to support a hostile work environment theory of liability. Def. Mem. of Law at 17.

The Court agrees.

Mr. Plana has worked at the IRS since 2007. OCRD Compl. at 5; Compl. ¶ 4. He alleges no employment action aside from his changed start time. *Id*. ¶ 8. Mr. Plana does not characterize Ms. Daley's ridicule of his accent as "frequent . . . pervasive", *Constantin,* 2009 WL 3053851 at *21, or "sufficiently continuous and concerted." *Duarte*, 265 F. Supp. 3d at 350.

Instead, Mr. Plana asserts that "the activities [described in his Complaint], taken as a whole, have created an objectively hostile working environment[.]" Compl. ¶ 4. This conclusory allegation is not entitled to any legal weight. *See Iqbal*, 556 U.S. at 678 (2009) ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . do not suffice."); *see also Twombly*, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the 'grounds' of [his or her] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (internal citations omitted)). As a result, the Court must dismiss Mr. Plana's hostile workplace claim.

In reaching this conclusion, the Court does not decide whether the ridicule of a plaintiff's accent, on multiple occasions, can support a hostile workplace claim. In fact, this Circuit's courts have found that "[e]vidence that supervisors ridiculed an employee's accent may . . . help support a finding that the employer created a hostile work environment because of the employee's national origin." *Constantin v. New York City Fire Dept.,* 2009 WL 3053851 at *19 (S.D.N.Y. 2009), *id*. at *21; *see also Duarte v. St. Barnabas Hosp*., 265 F. Supp. 3d 325, 350

(S.D.N.Y. 2017) ("A reasonable jury could conclude that Quinones' disability-based and national origin-based remarks about Plaintiff were 'sufficiently continuous and concerted to have altered the conditions of her working environment.'"), *citing Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002). Rather, the Court merely finds Plaintiff's current allegations of a hostile work environment insufficient to survive a motion to dismiss.

D.     **Retaliation**

Title VII prohibits an employer from discriminating against an employee because the employee has opposed an employment practice prohibited by Title VII. 42 U.S.C. § 2000e-3(a). Title VII retaliation claims are "analyzed under the McDonnell Douglas burden-shifting test." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010). "Under this framework, the plaintiff bears the initial burden to establish a prima facie case of retaliation by offering evidence that she 'participated in a protected activity,' 'suffered an adverse employment action,' and 'that there was a causal connection between her engaging in the protected activity and the adverse employment action.'" *Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 70 (2d Cir. 2015), *quoting Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010).

While "[t]he scope of the antiretaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm," it only protects an individual "from retaliation that produces an injury or harm." *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 67 (2006). To satisfy this standard, a plaintiff must show that the action "would dissuade a reasonable worker from making or supporting a charge of discrimination[.]" *Potenza v. W. Irondequoit Cent. Sch. Dist.*, No. 06-CV-6407, 2009 WL 2876204, at *7 (W.D.N.Y. Sept. 2, 2009), *citing Burlington Northern*, 548 U.S. at 68.

Mere counseling will rarely support a retaliation claim. *Rasko v. New York City Admin. for Children's Servs.*, 734 F. App'x 52, 54–55 (2d Cir. 2018) (summ. order), *cert. denied*, No. 18-624, 2019 WL 113189 (U.S. Jan. 7, 2019) ("Although she described Corse's action in October 2015 as putting her on probation, the actual notice, attached as an exhibit to the amended complaint, does not reflect any disciplinary action . . . . Rasko does not allege any facts suggesting that her work conditions changed as a result of the notice. It therefore does not constitute an adverse action . . . . Accordingly, the district court properly dismissed Rasko's disparate treatment claim.") (internal quotation and citation omitted)); *Perez v. New York & Presbyterian Hosp.*, No. 05 CIV5749 LBS, 2009 WL 3634038, at *12 (S.D.N.Y. Nov. 3, 2009) ("As such, the May 2004 reprimand for circulating the May 2004 report, inter alia, is not an adverse employment action because it did not even purport to rise to the level of a 'alteration of job responsibilities;' it merely counseled Plaintiff to work within the confines of his job description and to bring all complaints and suggestions to his immediate supervisor rather than Hospital administration.").

Mr. Plana alleges that supervisor Robert Bartoli placed a counseling memorandum in his file roughly one month after OCRD's final agency decision. Compl. ¶¶ 5, 11. Mr. Plana has alleged no injury or harm as a result of this memorandum. *Burlington Northern*, 548 U.S. at 67. He has not alleged that the memorandum put him on probation or altered his job responsibilities. *Rasko*, 734 F. App'x at 54–55; *Perez*, 2009 WL 3634038, at *12. The single counseling memo is legally insufficient to support a retaliation claim because it is not an adverse employment action.

As a result, the Court will dismiss Plaintiff's retaliation claim.

### E. Leave to Amend

Rule 15 of the Federal Rules of Civil Procedure provides that a party may either amend once as a matter of course within 21 days of service or the earlier of 21 days after service of a required responsive pleading or motion under Rule 12 (b), (e) or (f). FED. R. CIV. P. 15(a)(1). Once that time has elapsed, a party may move for leave to file an amended complaint. FED. R. CIV. P. 15(a)(2). The "court should freely give leave when justice so requires." *Id*.

As noted above, Mr. Plana has insufficiently pled employment discrimination. The Court, however, grants him leave to address the deficiencies described in this Ruling and Order. The Court notes that amended claims will be futile if they: (1) do not cure the deficiencies identified in this Ruling and Order; (2) rest on "mere conclusory statements" in support of new assertions, *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555; or (3) fail to adequately plead each element of a given claim (e.g., severe or pervasive hostile work environment).

## IV. CONCLUSION

For the reasons discussed above, the Court now **GRANTS** Defendant's motion to dismiss, ECF No. 24, but also grants Mr. Plana leave to file an Amended Complaint by **April 12, 2019**.

**SO ORDERED** at Bridgeport, Connecticut, this 12th day of March, 2019.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE